See also 25 F.R.D. 276.

**GOLDLAWR, INCORPORATED,**
Plaintiff,

v.

**Milton SHUBERT, William Klein, Sylvia W. Golde, Marcus Heiman, Select Operating Corporation and United Booking Office, Inc., Defendants.**

**GOLDLAWR, INCORPORATED,**
Plaintiff,

v.

**UNITED BOOKING OFFICE, INC.,** Select Operating Corporation, and Morgan Guaranty Trust Co. of New York (Successor to Guaranty Trust Co. of New York) and Asher Levy, Executors and Trustees of the Estate of Marcus Heiman, Defendants.

United States District Court
S. D. New York.
Dec. 11, 1962.
Supplemental Opinion Feb. 25, 1963.

Weil, Gotshal & Manges, New York City, Ira M. Millstein, New York City, of counsel, Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., Edwin P. Rome, Philadelphia, Pa., of counsel, for plaintiff.

Gerald Schoenfeld, and Bernard B. Jacobs, New York City, and Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendants Select Operating Corp. and United Booking Office, Inc., C. Russell Phillips and Hugh G. Moulton, Philadelphia, Pa., of counsel.

Lipper, Shinn & Keeley, New York City, for defendants Morgan Guaranty Trust Co. of N. Y. and Asher Levy, executors and trustees of estate of Marcus Heiman, Aaron Lipper, New York City, of counsel.

PALMIERI, District Judge.

This is a motion by plaintiff pursuant to Federal Rule 41(a) (2) for an order of voluntary dismissal of these anti-trust actions. Plaintiff originally instituted the actions against these and other defendants in the Eastern District of Pennsylvania. Defendants Select Operating Corporation and United Booking Office, Inc. there moved to dismiss on grounds of lack of *in personam* jurisdiction, and improper venue. Without ruling on the question of jurisdiction, the district court at Philadelphia held that venue was improper, but granted plaintiff's motion to transfer the actions here pursuant to 28 U.S.C. § 1406(a).[1]

After transfer, defendants Select Operating and United Booking again moved to dismiss. In an opinion dated August 10, 1959,[2] this Court held that the Philadelphia court lacked personal jurisdiction over these defendants; and that in the absence of such jurisdiction that court could not transfer under Section 1406(a) merely because venue was improper. This opinion was affirmed by the Court of Appeals for the Second Circuit.[3] The Supreme Court, however, reversed, holding that transfer for improper venue under Section 1406(a) is not limited to actions in which the transferring court has personal jurisdiction over the defendants.[4]

Plaintiff now contends that it is subject to a substantial economic burden in

1. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

2. The opinion is reported at 175 F.Supp. 793 (S.D.N.Y.1959).

3. Goldlawr, Inc. v. Heiman, 288 F.2d 579 (2d Cir. 1961).

4. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). "The section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years —that of removing whatever obstacles

having to pursue these actions here, and separate actions against other defendants in Philadelphia.[5] Dismissal here would allow it to concentrate its energies on the Philadelphia litigation. Plaintiff has requested a dismissal without prejudice, and has indicated its willingness to covenant with these defendants not to sue them in the future. Plaintiff contends that the covenant offers defendants the same protection as a dismissal with prejudice, while protecting plaintiff from possible adverse consequences in the still pending litigation in Philadelphia. In particular, plaintiff fears that a dismissal here with prejudice might be held to be *res judicata* as to the Philadelphia defendants as well, or might be viewed as a release of one joint tortfeasor that would subsequently release the tortfeasors still subject to liability in Pennsylvania.[6]

▆ As a general rule, and in pursuance of the salutary policy of encouraging the quieting and settlement of controversies, this Court would not deter a litigant who wishes to relinquish an action he has earlier commenced. Defend-

ants Select Operating and United Booking urge, however, that this case constitutes an exception to the rule.[7] They rely essentially on two points: first, that plaintiff itself has heretofore litigated extensively in order to remain in this court; and second, that irrespective of plaintiff's covenant not to sue, they remain subject to possible tortfeasor contribution in Philadelphia.[8] As to the first ground, means other than denial of the motion are available to compensate defendants adequately for the expense and inconvenience which they have sustained as a result of the earlier litigation. These means will be considered shortly.

As to the second point, defendants would have been in exactly the same position with respect to contribution if plaintiff had never originally joined them as parties defendant, or if their past attempts to have the case dismissed as to them had proved successful. Plaintiff should not be forced to bear the burden of litigation solely for the purpose of providing defendants with the immunity they seek.[9]

---

may impede an expeditious and orderly adjudication of cases and controversies." (At p. 466 of 369 U.S., at p. 915 of 82 S.Ct., from majority opinion of Mr. Justice Black).

5. Plaintiff's present motion is directed to three actions—Civil Actions 144–243, 144–244, and 149–349. The first two actions are those commenced in Philadelphia. Plaintiff commenced the last in this court, after transfer here of the Philadelphia actions. The parties have not pressed the Court to treat the three actions differently, and accordingly no attempt to distinguish between them will be made.

6. Counsel for Select Operating and United Booking, who also represent the defendants in the Philadelphia suits, have moved in Philadelphia to transfer those actions here on the grounds of convenience of parties and witnesses and in the interests of justice. Plaintiff has opposed the transfer motion, and a decision is now pending.

7. Although other defendants appeared on the motion, the main opposition has come

from Select Operating and United Booking.

8. See Larson, A Problem in Contribution: The Tortfeasor with an Individual Defense Against the Injured Party, 1940 Wis.L.Rev. 467, 469–80 (reviewing cases and suggesting that reliance not be placed on a covenant not to sue as a defense to contribution); but see Prosser, Torts 249 (1955) (stating rule to be that wilful wrongdoers are not entitled to contribution); Appleton, New York Practice 79–80 (6th ed. by Peterfreund, 1960) (discussion of strict limitations in New York on the right to contribution).

9. Plaintiff's position on this motion has been that it wants only a dismissal without prejudice; if such dismissal is not forthcoming, it wishes to proceed with the actions. Defendants, on the other hand, have urged another alternative on the Court, that of dismissal with prejudice, citing Pedreiro v. Shaughnessy, 18 F.R.D. 41 (S.D.N.Y.1955). In Pedreiro, however, and other cases in which dismissal with prejudice has been held proper, the courts were of the decided view that

Although the Court is unwilling to deny plaintiff the right to discontinue, this is not to say that no conditions other than the covenant not to sue offered by plaintiff, should be attached. As indicated earlier, this plaintiff has engaged in extensive maneuvering to maintain in this court the very actions it now wishes to discontinue. The argument plaintiff has presented throughout this maneuvering is that dismissal of these actions would cause it serious hardship because the causes sued upon would then be barred by the statute of limitations. In its petition for certiorari before the Supreme Court, plaintiff argued:

> "The hardship this decision can cause a plaintiff is illustrated quite clearly in the instant case. Petitioner's complaint was filed in the Eastern District of Pennsylvania within one year of the entry of a consent decree in a government suit alleging similar antitrust violations, thereby entitling petitioner to the benefit of the tolling of the statute of limitations * * *. Through no fault of the petitioner, the district court's decision that venue was improper wtih respect to respondents was rendered over two years later. By that time the larger part of the petitioner's claim was barred by the statute of limitations and, unless the transfer is upheld, will be unrecoverable without any consideration as to the merits thereof." [10]

When the Supreme Court reinstated the actions in this court, reversing the decisions that would have terminated the litigation here, hardship to plaintiff was one ground expressly cited by the Supreme Court in support of its interpretation of the transfer statute.[11] In view of these facts, it seems appropriate to provide that plaintiff bear reasonable costs and counsel fees for the extensive litigation to which defendants have been subjected.

■ The relief granted on this motion, then, is as follows:

1. Plaintiff's motion to dismiss without prejudice is granted upon condition that plaintiff offer to execute with defendants Select Operating Corporation and United Booking Office, Inc. a covenant not to sue them in the future, in the form attached to plaintiff's moving papers, or in such form as is mutually agreeable to the parties.

2. As a further condition of dismissal, plaintiff is to pay such reasonable costs and attorneys' fees as this Court will assess. The Court reserves decision as to whether such payment should abide the termination of the litigation pending in the Eastern District of Pennsylvania.

Defendants are to submit, within fifteen days, appropriate papers with respect to the proper amount of the costs to be assessed. Plaintiff shall have ten days thereafter in which to submit answering papers.

So ordered.

### Supplemental Opinion

In November of 1962 plaintiff moved, pursuant to Rule 41(a) (2), Fed.R.Civ. P., to discontinue these antitrust suits without prejudice. Defendants Select Operating Corporation and United Booking Office, Inc. opposed plaintiff's motion, requesting that the litigation continue, or that the dismissal be with prejudice, but at the least that plaintiff be obliged to pay costs and counsel fees as a condi-

---

plaintiff was not entitled on the merits to recover. See generally 5 Moore, Federal Practice, § 41.05, at 1021 (2d ed. 1951). Such a situation is not present here. See also Nagler v. Admiral Corp., 248 F.2d 319, 322 (2d Cir. 1957) (in the federal courts, "outright dismissal for reasons not going to the merits is viewed with disfavor * * *.").

10. Petition for Writ of Certiorari, p. 9, Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962).

11. Goldlawr, Inc. v. Heiman, supra note 10, at pp. 466–467 of 369 U.S., at pp. 915–916 of 82 S.Ct.

tion of dismissal. This Court granted plaintiff's motion, but on the condition that plaintiff give defendants a covenant not to sue, a term proposed by plaintiff itself, and also on the condition that plaintiff pay reasonable costs and attorneys' fees to be assessed by the Court.[1] As the Court pointed out in its opinion dated December 11, 1962, plaintiff had engaged in considerable litigation to be permitted to maintain the very suits it sought to discontinue. The Court believed that the cost of this litigation should rightfully be borne by plaintiff. Decision was reserved as to the amount of the assessment, and on the question of whether payment should abide the termination of connected suits against other defendants now pending in the Eastern District of Pennsylvania.

In response to the Court's request for further papers on the question of the amount of costs and counsel fees, plaintiff has submitted a rather lengthy affidavit that seeks again to place in issue the propriety of assessing any costs and counsel fees at all. Plaintiff makes three main points. First, that there exists a strong Congressional policy of favoring antitrust plaintiffs that precludes the imposition of monetary assessments as a condition of voluntary discontinuance of this litigation. Thus, plaintiff argues: "Our research has failed to uncover a single antitrust case which might support the opinion and order of this Court." Second, that since defendants will be given a covenant not to sue, they are receiving the equivalent of a dismissal with prejudice. This fact is claimed to vitiate the rationale upon which an award of costs and counsel fees could be based. Finally, plaintiff argues that it was entitled to litigate the issue of jurisdiction in this district, before deciding whether to continue the New York suits.[2]

None of these arguments gives the Court serious cause to believe that its initial determination was erroneous. Granted that Congress has evinced a policy of easing certain burdens on the antitrust plaintiff, nothing that Congress or the courts have said or done suggests that the Federal Rules of Civil Procedure are inapplicable to private antitrust suits.[3] That plaintiff is al-

---

1. See De Filippis v. Chrysler Sales Corp., 116 F.2d 375 (2d Cir. 1940) (district court may impose monetary assessment as condition of dismissal in patent infringement suit); 5 Moore, Federal Practice § 41.06, at 1025 (2d ed. 1951) (" * * * it is fairly consistently held that a plaintiff will not be permitted to dismiss, after defendant has been put to expense in preparing for trial, except on condition that plaintiff reimburse defendant for his expenses, sometimes including a reasonable attorney's fee."). See generally Note, 54 Colum.L.Rev. 616 (1954).

2. Plaintiff contends that it would be anomalous if it, after having been awarded the costs of its successful appeal to the Supreme Court, should now have to repay those costs to defendants. Such repayment, however, seems far less anomalous in the face of the statement in Lunn v. United Aircraft Corp., 26 F.R.D. 12 (D. Del.1960), a case cited and relied upon by plaintiff, that: "Most or all of the cases agree the Court costs as computed by the Clerk should be paid by plain-

tiff." 26 F.R.D. 12, at 18. See also Ransburg Electro-Coating Corp. v. Hamilton Mfg. Co., 159 F.Supp. 159 (E.D. Wis.1958), another case relied on by plaintiff, in which payment of costs totalling $1,813.68 was imposed as a condition of dismissal.

3. In Radovich v. National Football League, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957), the Supreme Court's express recognition that courts should not impose burdens on antitrust plaintiffs beyond those specifically set forth in the antitrust statutes, was made in the context of the Court's overruling "technical objections" directed to the sufficiency of plaintiff's complaint. In light of the present attitude of the federal courts toward motions to dismiss a complaint, see Nagler v. Admiral Corp., 248 F.2d 319 (2d Cir. 1957), the Court's holding was not surprising, nor was the statement as to antitrust plaintiffs made in the context of that holding. The statement alone, however, cannot sustain the far more drastic position plaintiff urges here.

legedly aggrieved by an antitrust violation will be one factor to be taken into account when the amount of the assessment is determined. It does not preclude the assessment altogether.[4]

■ As to plaintiff's contention arising from the claimed effect of a covenant not to sue, it is sufficient to point out that plaintiff has consulted its own convenience in avoiding a dismissal with prejudice. Perhaps, as defendants suggest, they remain open to possible tortfeasors contribution as a result of the Philadelphia litigation. Perhaps this suggestion is erroneous. Plaintiff, however, having chosen to place upon defendants the uncertainties that accompany a dismissal without prejudice, cannot be heard to complain if the Court recognizes those uncertainties in seeking to allow equitable termination of this litigation.[5]

■ As to plaintiff's final contention, that it could not make its decision earlier and that the issues it litigated were settled in its favor, the Court will give these factors whatever weight they deserve in making the final assessment.[6] Plaintiff cannot seriously contend, in view of its own admission that counsel was "unwilling" to decide until recently whether to discontinue these suits, that these factors exclude all assessments.[7]

Although as indicated, this Court believes that some monetary assessment

4. See, in this connection, United States v. E. I. Du Pont De Nemours & Co., 13 F.R.D. 490 (N.D.Ill.1953). There, the Government sought a dismissal without prejudice as to certain antitrust defendants who had expended both time and money in the preparation of their defense. The court expressed the view that ordinarily this expenditure would be a compensable one under the terms and conditions clause of Rule 41(a) (2), but that no such assessment could be imposed when the Government was the plaintiff. The court nonetheless allowed the discontinuance, holding that lack of power to order compensation of defendants for expenses incurred did not constitute a legal basis for denial of the Government's motion. 13 F.R.D. 490, at 497. It is clear from the opinion that the court found no impediment to the imposition of costs and fees from the fact that an antitrust cause of action was involved.

5. Plaintiff places great stress on the fact that if this litigation had proceeded to conclusion and defendants had been successful, they could not even then recover counsel fees. See Gillam v. A. Shyman, Inc., 205 F.Supp. 534 (D.Alaska 1962) and Straus v. Victor Talking Machine Co., 297 F. 791 (2d Cir. 1924), both of which hold that 15 U.S.C. § 15, which includes counsel fees as part of antitrust recovery, extends only to successful plaintiffs. The rationale, however, on which an award of counsel fees under Rule 41(a) (2) is based is not that successful defendants could have secured such fees but that defendants have been put to the expense of litigation all of which may at some future time have to be duplicated, since the dismissal is without prejudice. See McCann v. Bentley Stores Corp., 34 F.Supp. 234 (W.D.Mo. 1940). This rationale is not less applicable when possible liability lies not at the hands of this plaintiff, but at the hands of third parties who may seek to recover from defendants if they are held liable to plaintiff.

6. But see Home Owners' Loan Corp. v. Huffman, 134 F.2d 314, 317 (8th Cir. 1943). There, the Eighth Circuit held that the equities of plaintiff's position are not relevant when assessing "terms and conditions" under Rule 41(a) (2), since such terms and conditions are for the protection of the rights of defendant. This view is criticised in 2B Barron & Holtzoff, Federal Practice and Procedure § 912, at 118 n. 42 (rules ed. 1961).

7. Although plaintiff's main position is that defendants are entitled to no money at all, its affidavit also refers to several cases in which awards were made, but were no higher than $500. See, e. g., McCann v. Bentley Stores Corp., 34 F.Supp. 234 (W. D.Mo.1940) ($50) ; Hannah v. Lowden, 3 F.R.D. 52 (W.D.Okla.1943) ($150). Supposedly, these cases illustrate that courts have imposed only nominal sums under Rule 41(a) (2). Mere perusal of these cases, however, indicates that the situations were hardly comparable to that involved here. See also Federal Savings & Loan Ins. Corp. v. Reeves, 148 F.2d 731 (8th Cir. 1945) (award of $6,-743 not abuse of discretion and hence not

against plaintiff is proper,[8] several factors indicate the advisability of withholding any attempt to fix the amount at present. First, it seems that at least several items, pertaining largely to issues concerned with the merits rather than jurisdiction, are equally chargeable to the litigation in Philadelphia as to the suits here. This Court fears that a determination of these items now may result in either defendants receiving costs and fees to which they are not entitled, or in an assessment in an insufficient amount, as a result of excessive caution by the Court.

Second, the immediate imposition of costs and fees could conceivably interfere with plaintiff's ability to conduct the suits in Philadelphia. This result should be avoided.

Third, the outcome of the litigation in Philadelphia would eliminate several of the considerations that now impede a discontinuance on terms acceptable to both parties. Thus, should the litigation there be resolved against plaintiff, defendants would no longer be subject to tortfeasor contribution, and therefore would indeed be receiving the equivalent of a dismissal with prejudice through the covenant not to sue. Similarly, if plaintiff should win a judgment in Philadelphia, it is conceivable that plaintiff may withdraw some of its objections to paying reasonable costs and counsel fees here.

Finally, since the terms of a voluntary discontinuance are largely a discretionary matter, subject to reversal only if discretion is abused,[9] an added reason is present for insuring that every factor of importance is fully developed before a determination is made. In view of all these factors, the question of the amount of costs and fees to be assessed and the time when they shall be paid is further reserved until the termination of the litigation in Philadelphia, or such future time as the Court shall direct.

So ordered.

It is hardly likely that this Court would be justified in awarding such a substantial amount.

---

subject to reversal on petition for mandamus) ; Derman v. Stor-Aid, Inc., 7 Fed. Rules Serv. 41a.22, Case 6 (S.D.N.Y. 1943) (district court award of $5,000 in patent action).

8. The affidavits submitted by the attorneys for the various defendants request an assessment that aggregates over $80,000.

9. New York, C. & St. L. R. R. Co. v. Vardaman, 181 F.2d 769 (8th Cir. 1950) ; Federal Savings & Loan Ins. Corp. v. Reeves, 148 F.2d 731 (8th Cir. 1945).