The GAP, INC., Plaintiff,

v.

STONE INTERNATIONAL TRADING, INC., GAP–MA (Israel) Fashion Products, Ltd., Steven Stone, an Individual, Johnathan Simon a/k/a Simon Giovanni, an Individual, Nimrod Eshkol, an Individual, and Yossi Gershen, an Individual, Defendants.

No. 93 Civ. 638 (SWK).

United States District Court, S.D. New York.

Jan. 13, 1997.

Darby & Darby, New York City, by Paul Fields, Alexandra D. Malatestinic, for Plaintiff.

Wynne B. Stern, Jr., New York City, for Defendants Stone International Trading and Johnathan Simon.

*MEMORANDUM OPINION AND ORDER*

KRAM, District Judge.

In this action for unauthorized use of the "Gap" trademark, unfair competition and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), plaintiff The Gap, Inc. ("The Gap" or "Gap") moves to dismiss its complaint without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2). Defendants Stone International Trading, Inc. ("Stone International") and Johnathan Simon cross-move for costs and attorneys' fees, as well as sanctions. For the reasons set forth below, The Gap's motion to dismiss the complaint without prejudice is granted at such time that The Gap executes a covenant not to sue defendants in the future. Defendants' cross-motion for costs, attorneys' fees and sanctions is denied.

## BACKGROUND [1]

The Gap is a specialty retailer operating in the United States and abroad that sells casual and active-wear clothing under the Gap, Gapkids and BabyGap trademarks. Defendants Steven Stone ("Stone") and Johnathan Simon a/k/a Simon Giovanni ("Simon"), New York residents, were, respectively, president and senior vice-president of Stone International, a New York corporation.[2]

On June 11, 1992, former defendant Nimrod Eshkol ("Eshkol"), an Israeli citizen who resides and practices law in Israel, registered GAP–MA with the Israel Registrar of Companies for the purpose of importing and exporting fashion products. Thereafter, on July 2, 1992, Eshkol filed an application on behalf of GAP–MA for registration of the trademark "Gap" with the Israel Trademark Registrar. According to The Gap, Eshkol has indicated that he registered GAP–MA on behalf of defendant Simon. Eshkol further alleged that he held fifty percent of the shares of GAP–MA in trust for Stone International. Former defendant Yossi Gershen ("Gershen"), also an Israeli citizen and resident, held the remaining shares of GAP–MA.

On January 19, 1993, The Gap obtained a search and seizure warrant from the Magistrate's Court in Tel Aviv, Israel, issued as part of a criminal action against Boy's Acid Ltd. concerning counterfeit Gap-labelled goods. Pursuant to this warrant, The Gap's Israeli counsel together with the Israeli police executed a raid on the counterfeiters' premises. During the course of the search, Rafi Chen ("Chen"), one of the counterfeiters, indicated that he had been negotiating with Eshkol, who purported to be a representative of The Gap, to open a chain of Gap stores in Israel. Specifically, Chen advised The Gap's Israeli attorney that Eshkol had presented himself to Chen as representing the Israeli franchisee of The Gap, and that Eshkol had indicated that Stone International had been granted franchise rights in New York and Israel by The Gap. Chen also advised The Gap's Israeli counsel that Eshkol had attempted to extort shares of Chen's company in exchange for the right to use the Gap marks. Finally, Chen stated that he negotiated with Eshkol and had come to an arrangement whereby Chen would be allowed to run a store in Tel Aviv under the "Gap" name provided he transferred all the shares of his company to Eshkol. In support of these allegations, Chen produced a letter from Eshkol addressed to Chen's attorney. *See* Letter from Eshkol to Daniel Vugner, dated Dec. 20, 1992, annexed to the Declaration of Eran Soroker, executed on Nov. 21, 1993 (the "Soroker Decl."), as Exh. "2." In

---

1. The background of this action was set forth fully in *The Gap, Inc. v. Stone Int'l Trading, Inc.*, No. 93 Civ. 638, 1994 WL 670020, at *1–*4 (S.D.N.Y. Nov. 30, 1994), familiarity with which is presumed. Only those facts relevant to the disposition of this motion shall be recited below.

2. The identity of Steven Stone is a matter of dispute between the parties. The Gap asserts that Johnathan Simon, Giovanni Simon and Steven Stone are in fact the same person, and cite a New York state court proceeding to support this contention. *See* Complaint and Answer in *Philip Furgang v. Giovanni Simon a/k/a Jonathan Simon*

*and a/k/a Steven Stone and Stone Int'l Trading, Inc.*, New York Supreme Court, Rockland County, Index No. 3687/93, annexed to Pl.'s Memorandum in Supp. of Motion to Dismiss, dated Nov. 22, 1995, as Exh. "B." In his deposition in the present action, Simon gave an elaborate account of how he purchased Stone International from Steven Stone for $350.00, and how the last time he saw Steven Stone was in New York's garment district in about 1991. *See* Deposition of Johnathan Simon, taken March 16, 1992, at 9, 18–20.

the letter, Eshkol stated, inter alia, that "[m]y client, Stone Intrnational Tradeing Corp. [sic], a foreign corporation registered in the State of New York, is the owner of the franchise to sell and distribute Gap products (GAP)." *Id.* at 1.

On January 20, 1993, in response to a request from Gap's Israeli counsel, Eshkol drafted a facsimile transmission stating:

I represent an American corporation named Stone International Trading, Inc. from New York, which is the owner of the franchise to distribute Gap products in Israel. Their fax number is 212–791–6765. Mr. Simon Giovanni (?) is handling this matter for them. Please check with The Gap on the nature of the relationship between my client and The Gap, and reply as soon as possible.

Facsimile transmission from Eshkol to Eran Soroker, dated Jan. 20, 1993, annexed to the Soroker Decl., as Exh. "3." At his deposition taken on March 16, 1993, however, Simon indicated that Eshkol did not represent either Simon or Stone International. *See* Deposition of Johnathan Simon, taken on March 16, 1992, annexed to the Soroker Decl. as Exh. "6," at 69–70. Simon further indicated that he had not requested that Eshkol form GAP–MA on his behalf. Simon did state, however, that Gershen introduced Simon to Eshkol via telephone and that they had since spoken by telephone several times on a social basis. In addition, Simon stated that he had numerous telephone conversations with Gershen concerning whether Simon could purchase off-price Gap goods for resale in Israel. Simon ultimately declined to purchase these goods.

On February 1, 1993, Eran Soroker, The Gap's Israeli counsel, met with Eshkol. During this meeting Eshkol alleged that in June 1992 he received a written request from Giovanni Simon to set up the company, half of the shares of which were to held in trust by Eshkol for Stone International. Soroker Decl. ¶ 16.

On February 2, 1993, The Gap commenced this action for (1) counterfeiting and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) the perpetuation of a pattern of racketeering activity in violation of RICO sections 1962(c) and 1964(c), 18 U.S.C. § 1961, *et seq.;* and (3) unfair competition under New York State law. Specifically, The Gap's complaint alleges that defendants commenced a fraudulent scheme by which Stone International, acting through defendants Stone, Simon and Eshkol, misrepresented to manufacturers of counterfeit Gap clothing in Tel Aviv that Stone International was the owner of a franchise to sell and distribute Gap products. In addition, The Gap alleges that the defendants attempted to extort shares of stock of the counterfeit manufacturing business in return for purportedly authorizing the counterfeiters to operate a Gap store in Tel Aviv. Finally, The Gap alleges that defendants fraudulently attempted to register the Gap trademark in Israel.

On November 30, 1994 this Court dismissed the complaint against defendants Eshkol, GAP–MA and Gershen for lack of personal jurisdiction. Prior to the November 30, 1994 Order, The Gap brought an action before the Israel Commissioner of Patents, Trademarks and Designs against Eshkol and GAP–MA, seeking a determination that The Gap was the only legitimate owner of rights to the Gap marks in Israel. On July 5, 1995, the Commissioner granted The Gap's request, finding that The Gap owns all right, title and interest in and to the Gap marks in Israel, and that Eshkol and GAP–MA have no right in the Gap marks. *See* Decision of the Israel Comm. of Patents, Trademarks and Designs, dated July 5, 1995, annexed in part to the Soroker Decl. as Exh. "F."

The Gap presently moves to dismiss the complaint against the remaining defendants without prejudice. The Gap contends that as a result of the decision by the Israel Commissioner of Patents, Trademarks and Designs, the defendants are effectively prohibited from using The Gap's marks in Israel in any respect, and thus the current litigation is unnecessary. Defendants Stone International and Johnathan Simon move for costs, attorneys' fees and for the imposition of sanctions, pursuant to the Court's inherent power to assess such fees, Federal Rule of Civil Procedure 11, 15 U.S.C. § 1117, and 28 U.S.C. § 1927.

588

## DISCUSSION

### I. Dismissal of Claims Without Prejudice

Rule 41(a)(2) provides that except where all parties agree to a stipulation of dismissal, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2). Such a determination is within the sound discretion of the court. *Guzman v. Hazemag U.S.A., Inc.*, 145 F.R.D. 308, 309 (E.D.N.Y.1993).

Although voluntary dismissal without prejudice is not a matter of right, *Zagano v. Fordham University*, 900 F.2d 12, 14 (2d Cir.), *cert. denied*, 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990), the presumption in this circuit is that a court should grant a dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result. *Guzman v. Hazemag U.S.A., Inc.*, 145 F.R.D. at 309; *Indu Craft, Inc. v. Bank of Baroda*, No. 87 Civ. 7379, 1991 WL 107438, at *4 (S.D.N.Y. June 7, 1991); *Zimpro, Inc. v. United States Environmental Protection Agency*, 83 F.R.D. 302, 303 (N.D.N.Y.1979). This rule furthers the "salutary policy of encouraging the quieting and settlement of controversies...." *Goldlawr, Inc. v. Shubert*, 32 F.R.D. 467, 469 (S.D.N.Y.1962).

The Second Circuit has enunciated the following factors as relevant to deciding whether to grant a Rule 41(a)(2) motion: (1) the plaintiff's diligence in bringing the motion; (2) any "undue vexatiousness" on plaintiff's part; (3) the extent to which the suit has progressed, including the defendant's effort and expense in preparing for trial; (4) the duplicative expense of relitigation; and (5) the adequacy of plaintiff's explanation for the need to dismiss. *Zagano v. Fordham University*, 900 F.2d at 14; *see also Guzman v. Hazemag U.S.A., Inc.*, 145 F.R.D. at 309–10.

In *Zagano*, the Court denied a plaintiff's Rule 41(a)(2) motion where an action had been pending for several years, extensive discovery had already taken place and the defendants had spent substantial resources in preparing for trial. The present case is distinguishable from *Zagano* and its·progeny in several respects. Although this action has been pending for nearly four years, it has been relatively dormant for at least three of the four years, and the action is far from being on the "eve of trial" as was the case in *Zagano*. Each party has deposed only a single witness. Aside from motions for sanctions, few resources have been spent by the non–Israeli defendants in preparing for trial. In addition, there is no possibility of relitigation, as The Gap is willing to release the present claims.

Furthermore, The Gap offers a plausible explanation for its present Rule 41(a)(2) dismissal request. The Gap claims that it has established its right to the Gap marks in Israel and that the defendants no longer appear to be engaged in the complained of activity. As a result, The Gap's stated reason for bringing the action, namely, to bring about defendants' cessation of use of plaintiff's Gap marks, has been achieved. Finally, as discussed below, there is no evidence that the present action was brought in bad faith.

Rule 41(a)(2) allows a court to set "terms and conditions" in allowing a plaintiff to dismiss its case. *See* Fed.R.Civ.P. 41(a)(2). Here, along with its request to dismiss without prejudice, The Gap has moved to enter an order prohibiting it from bringing these claims in the future based on the defendants' past acts. The Court grants The Gap's motion to dismiss the complaint without prejudice upon The Gap's execution of a covenant not to sue defendants in the future.

### II. Costs and Attorneys' Fees

Although a court may impose attorneys' fees and costs under Rule 41(a)(2), it should do so only when justice so demands. *Manners v. Fawcett Publications, Inc.*, 85 F.R.D. 63, 65 (S.D.N.Y.1979) (citing 5 James Wm. Moore et al., Moore's Federal Practice ¶ 41.05(1) (2d ed. 1985)); *see also In re Shavit*, 197 B.R. 763, 771 (Bankr.S.D.N.Y.1996) (refusing to award fees and costs after a Rule 41(a)(2) dismissal absent evidence plaintiff commenced or conducted action in "bad faith, vexatiously, wantonly, or for oppressive reasons"). Where dismissal is sought immediately prior to the commencement of trial, *Pathe Lab., Inc. v. Technicolor Motion Pic-*

*ture Corp.,* 19 F.R.D. 211 (S.D.N.Y.1955), or after a trial has actually commenced, *Nazzaro v. Weiner,* 38 F.R.D. 430 (D.N.J.), *aff'd,* 353 F.2d 537 (3rd Cir.1965), costs and fees may be appropriate.

■ Under the present circumstances, the Court declines to award attorneys' fees or costs to the defendants. The purpose of such an award is generally to reimburse the defendant for the litigation costs incurred in view of the risk faced by the defendant that the same suit will be refiled and will result in the imposition of duplicative expenses. *See Colombrito v. Kelly,* 764 F.2d 122, 134 (2d Cir.1985); *Goldlawr, Inc. v. Shubert,* 32 F.R.D. 467, 472 n. 16 (S.D.N.Y.1962). The Gap's offer of a covenant not to sue obviates the need to reimburse the defendants on this ground, however, since there is no possibility of relitigation. In addition, as discussed above, the litigation is still in a fairly early stage procedurally. Finally, as discussed below, the Court finds that The Gap did not commence or conduct this action in bad faith. *See Debruyn Produce Co. v. Sobiech,* No. 91 Civ. 7995, 1992 WL 168098, at *6 (S.D.N.Y. June 30, 1992).

### III. Rule 11 Sanctions

Federal Rule of Civil Procedure 11 allows the imposition of sanctions " 'where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands....' " *Stern v. Leucadia Nat. Corp.,* 844 F.2d 997, 1005 (2d Cir.) (quoting *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985)), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988). In considering a motion for sanctions the Court is to avoid hindsight and resolve all doubts in favor of the signer. *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986), *cert. denied sub nom. Suffolk County v. Graseck,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *see also Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir.1994) ("Rule 11 sanctions should be imposed with caution"); *Paris Partners, L.P. v. Russo,* No. 94 Civ. 5684, 1995 WL 746585 (S.D.N.Y. Dec. 14, 1995).

Rule 11 imposes an affirmative duty on a plaintiff to conduct a reasonable inquiry into the facts and the law before filing, and the standard is one of reasonableness under the circumstances. *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 551, 111 S.Ct. 922, 933, 112 L.Ed.2d 1140 (1991); *Knipe v. Skinner,* 19 F.3d at 75. Sanctions should not be imposed, however, where an attorney has an objectively reasonable basis to pursue a factual claim. *Oliveri v. Thompson,* 803 F.2d at 1278–79.

In *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452 (2d Cir.1988), *rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), the Second Circuit set forth the test for determining whether a factual claim is properly brought. Initially, the Court must determine whether an objectively reasonable evidentiary basis for a claim has been demonstrated. Where such a basis is shown, no inquiry into the adequacy of the attorney's pre-filing investigation is necessary. If no reasonable evidentiary basis for a factual claim has been disclosed, the Court must then scrutinize the objective reasonableness of the attorney's pre-filing inquiry and the basis for the claim developed by that inquiry. *Id.* at 1470.

Prior to filing its complaint, The Gap claims it was in possession of the following evidence upon which it based its claims: (1) The Israeli Court's authorization of the raid based upon counterfeiting of Gap marked goods; (2) Chen's account of the defendants' extortion attempt and their attempt to pass themselves off as the owners of rights to the Gap marks and franchise in Israel; (3) a facsimile communication in which Israeli defendant Eshkol, stating that he was acting on behalf of United States defendants Simon and Stone International, represented that Stone International owned the franchise to sell and distribute Gap products, which contained a "cc" to a New York telephone number which appeared to be a fax number for United States defendants Simon and Stone International (Complaint Exh. B); (4) a letter from Eshkol to the attorney or agent for counterfeiters in Tel Aviv who were manufacturing and selling counterfeit Gap clothing, in

which Eshkol, stating he was acting on behalf of Stone International, attempted to extort shares of stock of the retail and clothing manufacturing business of the counterfeiters in return for the "authorization" to the counterfeiters to operate a store in Tel Aviv under the name "Gap" (Complaint Exh. C); (5) an application for trademark registration in Israel for the Gap mark in plaintiff's stylized letters, filed by Eshkol on behalf of GAP–MA, a company alleged by Eshkol to be half owned by Stone International (Complaint Exh. D); (6) Eshkol's statements that (a) he had received in June 1992 a written request from Simon to set up the company GAP–MA, half of the shares of which were to be held in trust by Eshkol for Stone International, (b) within the scope of his representation, he had negotiated with Rafi Chen on behalf of his "client," and (c) there were backup written documents for every action taken on behalf of Stone International and Simon; and (7) an admission by the United States defendants' then attorney that the actions complained of were taken by employees of Stone International.

The Court finds that these facts form an objectively reasonable basis for The Gap's claims that defendants Simon and Stone International, through their agent Eshkol, performed acts which contributed to the goal of the enterprise, namely the misappropriation of the goodwill in the Gap marks as well as the deception of the public regarding defendants' affiliation with The Gap and defendants' authority to use the Gap marks. Since there was no evidence that The Gap's claims had become frivolous, unreasonable or groundless, there was still an objectively reasonable basis for The Gap to pursue its claims when each reaffirmation was signed. *See Oliveri v. Thompson,* 803 F.2d at 1274–75; *Eastway Constr. Corp. v. City of New York,* 762 F.2d at 252.[3]

Applying the above standard to the claims in The Gap's complaint, the Court finds that,

despite defendants' argument to the contrary, The Gap's RICO and Lanham Act claims were adequately investigated and present a viable and nonfrivolous legal argument. In addition, the Court finds that The Gap had a reasonable basis for concluding that it had standing to pursue the present action.

### A. The Gap's RICO Claims

■ In order to state a claim under the RICO statute, 18 U.S.C. § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The Gap's complaint alleges that at different times throughout at least 1992 and 1993, each defendant committed at least two acts of mail fraud and/or wire fraud, Complaint at ¶¶ 20–22, 28–29; *see also H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 237, 109 S.Ct. 2893, 2899–2900, 106 L.Ed.2d 195 (1989), in furtherance of a scheme in which the defendants knowingly, willfully, falsely, and fraudulently misrepresented to The Gap's legitimate Israeli agents and to others, including counterfeiters, that the defendants were the owners of the Gap marks, or authorized to act on behalf of the owner of the Gap marks in the granting of franchises or licenses to market clothing. In furtherance of this scheme, The Gap alleges that defendants (1) placed within the United States or international mails correspondence associated with and referencing the fraudulent scheme; and/or (2) received through the United States or international mails, either directly or indirectly, funds and monies associated with the fraudulent scheme; and/or (3) communicated with each other over wire in furtherance of the fraudulent scheme.

■ In addition, The Gap alleges in its complaint, and had a proper basis for so

---

3. In any event, it appears defendants have not complied with the "safe harbor" procedural requirements of Federal Rule 11, as amended in 1993. According to amended Rule 11(c)(1)(A), a motion for sanctions "shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged pa-

per, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed.R.Civ.P. 11(c)(1)(A). Here, no such notice was given to The Gap. Although the complaint was filed prior to the 1993 amendments, many of the reaffirmations that are the subject of this sanctions motion occurred after December 1, 1993.

alleging, that an "enterprise" existed in the form of defendants engaging in a continuous, on-going and common activity of misappropriating the good will of the Gap marks. Complaint ¶ 26. There is no requirement that the "enterprise" be an actual formal entity, have a name or have any legitimate purpose for its existence. *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981). The Court finds that given the facts that existed at the time the complaint was filed, there was an objectively reasonable basis for The Gap's assertion that defendants were engaged in conduct "through a pattern of racketeering activity." 18 U.S.C. § 1962(c).[4]

### B. Lanham Act and New York Common Law Claims

█ The Lanham Act, 15 U.S.C. § 1125(a), imposes liability on a person who uses any word, term, name, symbol or device which is

> likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . .

15 U.S.C. § 1125(a)(1). Defendants claim that The Gap has failed to assert, and cannot prove, facts sufficient to support a Lanham Act claim or a claim in violation of New York state law, and thus, sanctions are warranted.

To state a claim for relief under the Lanham Act and New York law, a plaintiff must show: A person who, in connection with goods or services, uses in commerce any false description of origin, false or misleading description or representation of fact is likely to cause confusion, mistake, or association of such person with another person, and that plaintiff is or is likely to be damaged by such act. *See* 15 U.S.C. § 1125(a); *Nikon Inc. v. Ikon Corp.,* 987 F.2d 91, 93–96 (2d Cir.1993).

The Gap alleges in its complaint that defendants fraudulently misrepresented to manufacturers of counterfeit Gap clothing in Tel Aviv that Stone was the owner of "the franchise to sell and distribute Gap products." Complaint ¶ 20. The Gap further alleges that defendants willfully and falsely designated and represented that defendants were legitimately connected with The Gap and their products, resulting in irreparable harm to The Gap. Complaint ¶¶ 40–41.

Defendants contend that The Gap has failed to demonstrate that the Lanham Act reaches acts occurring in Israel. The activity alleged in the complaint, however, is not limited to Israel, but includes allegations that Simon and Stone International were directing the infringing activities from the United States. In any event, the extraterritorial reach of the Lanham Act is extremely broad, and has often been used to enjoin acts of infringement committed abroad. *See Steele v. Bulova Watch Co.,* 344 U.S. 280, 281, 286, 73 S.Ct. 252, 253, 255–56, 97 L.Ed. 319 (1952) ("A United States district court has jurisdiction to award relief to an American corporation against acts of trademark infringement and unfair competition consummated in a foreign country by a citizen and resident of the United States."); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.,* 970 F.2d 552, 554 (9th Cir.1992) (Lanham Act provides a "broad jurisdictional grant"). In determining whether Lanham Act relief is appropriate, the following factors are to be considered: (1) whether a defendant's conduct has a substantial effect on United States commerce; (2) whether the defendant is a United States citizen; and (3) whether extraterritorial enforcement of the trademark will encroach upon foreign trademark rights. *Vanity Fair Mills v. T. Eaton, Co.,* 234 F.2d 633 (2d Cir.), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); *Calvin Klein Indus. v. BFK Hong Kong, Ltd.,* 714 F.Supp. 78, 79 (S.D.N.Y.1989). Here, The Gap's marks have worldwide recognition, and the defen-

---

**4.** The fact that The Gap pleaded various fraud allegations "upon information and belief" does not rise to the level of sanctionable conduct. *See Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974) (requirements of Federal Rule of Civil Procedure 9(b) may be "relaxed as to matters peculiarly within the opposing party's knowledge"), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *see also Denny v. Barber,* 576 F.2d 465, 468 (2d Cir.1978); *Merrit v. Libby, McNeill & Libby,* 510 F.Supp. 366, 373 (S.D.N.Y.1981).

dants' activities in the United States and in Israel arguably damaged The Gap's trade reputation. At the time the complaint was filed, Simon was a New York resident and principal of Stone International, a New York corporation. Finally, this Court's assertion of Lanham Act jurisdiction does not appear to conflict with the law or policy of Israel or any other nation because the Court is adjudicating the rights of United States citizens. As the Court finds that The Gap's belief that extraterritorial jurisdiction would lie under the present circumstances was not unreasonable, the Court declines to grant sanctions on this issue.

## C. Standing

■ Defendants also contend that they are entitled to sanctions because plaintiff has no rights to the Gap marks in Israel and therefore lacks standing to bring this action. This assertion is without merit. The Court finds that The Gap had an objectively reasonable basis for believing standing to exist, based on (1) the Israeli authorities' apparent recognition that The Gap had some rights to the Gap marks in Israel when they sanctioned the January 1993 raid; and (2) the Israel Commissioner of Patents and Trademarks' determination that The Gap owned all right title and interest in and to the Gap marks in Israel. In addition, The Gap is licensed to use the Gap marks and has the right and obligation to enforce the rights in the Gap marks. *See* Complaint ¶ 10; Gap Trademark Registration, annexed to Complaint as Exh. "A."

## IV. Sanctions Under Section 1927

■ 28 U.S.C. § 1927 authorizes monetary sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. In

*United States v. International Bhd. of Teamsters,* the Second Circuit clarified the role of section 1927: "Rule 11 requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers, but § 1927 requires more: subjective bad faith by counsel." *United States v. International Bhd. of Teamsters,* 948 F.2d 1338, 1346 (2d Cir.1991); *see also Kamen v. American Telephone & Telegraph Co.,* 791 F.2d 1006, 1010 (2d Cir.1986) (section 1927 requires a "clear showing of bad faith"); *State of West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1092 (2d Cir.) (same), *cert. denied,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson,* 803 F.2d at 1273.

For the reasons set forth above, The Gap's complaint was supported by a reasonable factual basis at the time it was signed.[5] With respect to the contention that Simon's deposition testimony revealed that The Gap's claims were not colorable, the Court finds that the testimony does not show that The Gap's claims were continued in bad faith. Moreover, the only additional action taken by The Gap was its attempt to bring the Israeli defendants before the Court to determine the basis of their allegations that they represented Simon and Stone International. In addition, although Simon testified that Eshkol never performed any legal work for him, Simon refused to release Eshkol from a claim of privilege. *See* Defs.' Response to Pl.'s Motion to Order Waiver of Attorney–Client Privilege. The Court does not find that these actions unreasonably multiplied the proceedings in this action.[6]

---

**5.** Defendants complain that Paula Levitan lacked first hand knowledge of allegations in the complaint. In her deposition dated March 22, 1993, Ms. Levitan stated that she relied upon the investigation of The Gap's Israeli counsel as forming the basis for the complaint. Such actions do not reach the level of sanctionable conduct.

**6.** In addition, defendants claim that sanctions are warranted under section 35 of the Lanham Act, 15 U.S.C. § 1117, which provides that "[t]he

court in exceptional cases may award reasonable attorney's fees to the prevailing party." 15 U.S.C. § 1117; *Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1229 (2d Cir.1987). Such exceptional cases usually require a finding that the losing party had either prosecuted or defended a claim in bad faith. *See, e.g., Mennen Co. v. Gillette Co.,* 565 F.Supp. 648 (S.D.N.Y.1983), *aff'd,* 742 F.2d 1437 (2d Cir.1984) (awarding counsel fees to a defen-

## CONCLUSION

For the reasons set forth above, The Gap's motion to dismiss the complaint without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2), is granted upon The Gap's execution of a covenant not to sue defendants in the future. Defendants' motions for costs, attorneys' fees and sanctions are denied.

SO ORDERED.

dant which had successfully defended against trademark and unfair competition claims). For the reasons set forth above, the Court finds that The Gap has not acted in bad faith in bringing this action. Moreover, defendants have not been deemed the prevailing party within the meaning of section 1117. Accordingly, sanctions are inappropriate under this provision.