In re Eric Joel TAYLOR, Debtor.

Eric Joel TAYLOR, Plaintiff,

v.

Eileen P. TAYLOR and W.W. Mitchell, II, Defendants.

Eileen P. TAYLOR, Plaintiff,

v.

Eric Joel TAYLOR, Defendant.

Bankruptcy No. 382–01032–F–7.

Adv. Nos. 385–3308, 385–3317.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

April 12, 1985.

Michael E. Robinson, Timothy A. Duffy, Hughes & Luce, Dallas, Tex., for debtor.

Toby L. Gerber, Berman, Fichtner & Mitchell, Dallas, Tex., for Eileen P. Taylor and W.W. Mitchell, II.

## MEMORANDUM OPINION

JOHN C. FORD, Bankruptcy Judge.

On April 9, 1985 this Court heard, in chambers, the Motion of Eileen P. Taylor, (hereinafter "Eileen"), to dissolve the temporary restraining order issued *ex parte* by this Court on April 1, 1985, restraining Eileen and her counsel from commencing or continuing any action to collect debts alleged to be owing under a certain "Contract for Alimony" executed by the parties several years prior to Eric Joel Taylor's petition for relief. The order specifically enjoined Eileen and her counsel from taking any further action in litigation pending in the 116th Judicial District Court of Dallas County, Texas. Counsel for Eric Joel Taylor (hereinafter "Eric") subsequently filed a motion to reopen Eric's bankruptcy case, in which a discharge had been granted on December 20, 1982. Counsel for Eileen have vigorously protested the removal of the state court litigation to this

Court, and oppose as well the reopening of Eric's bankruptcy case.

## FACTUAL BACKGROUND

Eric and Eileen Taylor were divorced by decree entered on or about February 6, 1978. In the process of settling their respective claims against the community estate and against one another, they apparently executed a certain "Contract for Alimony". It is Eric's position before this Court that said Contract was in the nature of a property division, and therefore a dischargeable obligation under 11 U.S.C. § 727. Eileen, of course, views the situation somewhat differently, regarding the obligations created by said Contract as in the nature of a debt for alimony or support of a former spouse and therefore excepted from discharge pursuant to 11 U.S.C. § 523(a)(5). In any event, the agreement was amended in 1979 to provide for, *inter alia*, the payment by Eric to Eileen of the sum of $40,000.18 in 121 convenient monthly installments of $330.58. In addition, Eric paid the lump sum of $3,000.00 to Eileen as part of the settlement of the parties' dispute.

Eric filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 4, 1982. He scheduled his obligations to Eileen under the Contract as an unsecured claim without priority in the amount of $30,000.00. It appears that Eileen, as a creditor, was duly notified of all proceedings in the case, and according to the clerk's certificate of mailing, she was sent, as a scheduled creditor, a Notice of Discharge of Debtor on or about January 1, 1983.

Approximately one year after Eric received his discharge, Eileen brought an action in the 116th Judicial District Court of Dallas County to obtain a money judgment on the obligations allegedly owed her under the terms of the Contract with Eric. Trial was held on March 29, 1985, and judgment was rendered in favor of Eileen and against Eric. The Court ordered counsel for Eileen to prepare a judgment for his signature, at which time Eric interposed his complaint in this Court.

## DISCUSSION

There is no question, and both parties agree, that this Court has jurisdiction over the question of the dischargeability of Eric's debt to Eileen under their "Contract of Alimony". Eric attempts to characterize his obligation as incident to a property division, and therefore, dischargeable. At first glance, this approach appears to be buttressed by the strong public policy in Texas against awards of alimony incident to a divorce decree. *See, e.g., Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex.1979); *United States v. Stelter*, 567 S.W.2d 797 (Tex.1978). On the other hand, Eileen notes that the exception to discharge set forth in Section 523(a)(5) of the Bankruptcy Code is not limited to alimony per se, but also encompasses debts to a former spouse for the support of the latter pursuant to a settlement agreement. Such contractual obligations are not always considered alimony, and therefore void, by Texas courts. *See, e.g., Francis v. Francis*, 412 S.W.2d 29, 32 (Tex.1967). These arguments, while interesting, are nevertheless irrelevant to the issue at hand, namely, whether this Court should exercise its jurisdiction in the presence of pending state litigation dealing with the very same dispute.

Eric asserts that his right to remove the case to this forum is absolute, quoting 28 U.S.C. § 1478 (now addressed by 28 U.S.C. § 1452), which states in pertinent part,

A party may remove any claim or cause of action in a civil action ... to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.

Citing *Williams v. Gruley*, 1 C.B.C.2d 1086 (Bkrtcy.N.D.Ga.1980), Eric notes the particular expertise of the bankruptcy court in determining the effect of the alleged obligation upon his ability, as a newly discharged debtor, to take advantage of his "fresh start". In *Williams*, the debtor filed a complaint to determine discharge-

ability prior to receiving his discharge. His complaint concerned the effect of a state court decree of divorce, and obligations created thereunder, entered several months before he filed his petition for relief with the bankruptcy court. The Court, relying upon *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), held that the state court judgment was not *res judicata* with respect to subsequent determinations by the bankruptcy court of the character and dischargeability of the obligations thereby created. Of course, the *Williams* case is clearly distinguishable on its facts. There the debtor brought a complaint to determine dischargeability long before the discharge was granted, and well after the conclusion of the state court litigation. In the case at bar, however, Eric had not addressed the issue of the dischargeability of his debt under the Contract until the present complaint was filed, some two and a half years after receiving his discharge and more than a year after state court proceedings were initiated and, coincidentally, on the eve of entry of a state court judgment adverse to his interests. Whereas *Williams* dealt with litigation that had been concluded, and therefore involved no interference with the state judicial process, the present complaint calls for direct interference by this Court in the ongoing judicial processes of the state of Texas.

▪ Eric has asserted in briefs filed with this Court and in discussions held in chambers that he has not been provided the opportunity to present his claims concerning the proper interpretation of his debts. Counsel for Eileen have protested that Eric was in attendance and represented by competent counsel during the state court trial, and that ample opportunity was offered to present evidence and argument concerning the applicability of bankruptcy law to the disputed issues. Eric's own admission in chambers that the issues had indeed been addressed, by way of filing a plea in abatement with the state court, lends support to Eileen's statement. That the plea in abatement was overruled does not establish that Eric was deprived of his day in court. It is

well settled that where an issue is directly presented in the state court, the bankruptcy court, under principles of comity, may abstain from deciding the same issues, especially where the state action has already been tried and is merely awaiting final judgment. *In re Ericson*, 26 B.R. 973, 976 (Bkrtcy.C.D.Cal.1983). That the state court has jurisdiction to hear the issues raised in this forum is beyond dispute. *See* Rule 4007, Rules of Bankruptcy Procedure advisory committee note ("jurisdiction over this issue on these debts is held concurrently by the bankruptcy court and any appropriate nonbankruptcy forum"). That Eric had the opportunity to present these issues, and apparently did present them, appears to be established as well.

In many ways, this case is reminiscent of the facts present in *Ramus v. Ramus*, 32 B.R. 67 (Bkrtcy.N.D.Ga.1983). There the debtor brought an adversary proceeding in the bankruptcy court to modify the terms of an alimony decree entered by a state court. In discussing its decision to abstain from hearing the complaint, the Court noted the pendency of an identical action in the appropriate state court, and considered the advisability of interference by the bankruptcy court with the ongoing state judicial processes.

> While this Bankruptcy Court has jurisdiction over the adjustment of the debts of this Chapter 13 Debtor, to adjudicate the relative rights and debt adjustment of these parties seems to this court to be beyond the reasonable and normal expectation of the exercise of such bankruptcy jurisdiction. This case and this proceeding may illustrate the current propensity of more debtors to attempt to use the Bankruptcy Court to adjust marital disputes of separated or divorced individuals when the State courts are the more appropriate forum to settle such post-petition decree disputes as compared to this court of insolvent debtors. These type actions smack of forum shopping. This court declines to allow the Bankruptcy Court to substitute for or override the marital court which is the court of first

and more appropriate jurisdiction over these former spouses. This court declines to retain jurisdiction and interfere with the jurisdiction of the State divorce court in this dispute involving disputed financial rights of these divorced parties.

32 B.R. at 68. This is by no means a novel reaction to situations such as those presented in the case at bar. *See, e.g., Moses v. Moses,* 34 B.R. 378 (S.D.Tex.1983) (affirming bankruptcy court decision to abstain, on the ground that the adversary action filed by the debtor was nothing more than a collateral attack on a state judgment, as not reviewable); *In re Boyd,* 31 B.R. 591, 596 (D.Minn.1983); *In re Schack,* 46 B.R. 520 (Bkrtcy.S.D.Fla.1985).

■ Although it deals with a different subsection of 11 U.S.C. § 523, the treatment of a similar adversary complaint in *In re McNeil,* 13 B.R. 743 (Bkrtcy.S.D.N.Y. 1981) is pertinent to this proceeding. There the debtors failed to list a secured creditor on his schedules, placing them squarely in the circumstances contemplated by § 523(a)(3). Six months after receiving their discharge, the debtors attempted to reopen their case to reschedule the missing creditor and as a shield against a state court judgment adverse to their interests. Two months prior to the motion to reopen, the creditor had initiated proceedings on the obligation in state court, wherein the debtors asserted their discharge as a complete defense to the obligation. The Court perceived this action by the debtors as an ill-disguised example of forum shopping, and denied the motion to reopen.

> The determination of dischargeability under § 523(a)(3), unlike such determinations under § 523(a)(2), (4), or (6), is of the type over which the Bankruptcy Court has concurrent, but not exclusive jurisdiction. Conceivably, the debtors would prefer to litigate this issue in the federal bankruptcy forum where discovery devices, rules of evidence and case law may be more compatible with their objectives than those pertaining in the state courts. Perhaps they perceive an enhanced likelihood of success in defeating the [creditor's] claim if this issue

were to be determined by the court which granted their discharge and where they may hope to invoke general equity powers to protect their discharge and fresh start. In asserting their discharge in bankruptcy as a defense to the [creditor's] state court action on the debt, the debtors have, in effect, chosen to litigate in that forum the issue of whether [the debt was dischargeable.]

13 B.R. at 747. As noted earlier, Eric has apparently presented his defense of discharge to the state court. Clearly he did not choose to pursue his remedy of removal until it was obvious that his defense had been rejected. It is difficult to suppress the conclusion that, had the state court regarded his discharge differently, Eric would be satisfied with the result and would not feel compelled to invoke the special expertise of this Court. Under these circumstances, there is little question that Eric seeks to use the removal process as nothing more than an opportunity to retry the case without resort to the appellate process provided by Texas law. It has long been the position of the bankruptcy courts of this district that where such appellate processes remain available, the bankruptcy court should abstain.

> [T]his cause of action has already been tried. To retain it would result in added expense to the litigants and loss of time and judicial economy. The debtors may appeal within the state court system to correct any errors in the trial. Permitting the removal of this case would in effect give debtors a second trial and would not expedite or benefit the bankruptcy case. It is not the function of removal under § 1478 to afford an alternative to state court appeal. Absent other reasons the bankruptcy court should refrain from the exercise of removal jurisdiction.

*In re Tidwell,* 4 B.R. 100, 102 (Bkrtcy.N.D. Tex.1980). *See also In re Moore,* 5 B.R. 67, 69 (Bkrtcy.N.D.Tex.1980). *Cf. In re Hurt,* 9 B.R. 749, 754–5 (Bkrtcy.N.D.Ga. 1981); *In re Shaffer,* 42 B.R. 522, 525–6 (Bkrtcy.N.D.Tex.1984). This Court is

aware of no other reasons sufficiently compelling to justify removal at the expense of the state appellate process. Accordingly, under the principles implicit in these authorities and in 28 U.S.C. 1471(d) and 1478(b), this Court is of the opinion that abstention is the most equitable course to follow, and this case will therefore be remanded to the 116th Judicial District Court of Dallas County, Texas. It is so ordered.