**CORRESPONDENT SERVICES CORPORATION, Interpleader–Plaintiff,**

v.

**J.V.W. INVESTMENTS LTD., First Equities Corporation of Florida, J.V. Waggoner, and Donal Kelleher, Interpleader–Defendants,**

and

**Suisse Security Bank and Trust, Ltd., Additional Defendant on the Cross–Claims.**

**No. 99 Civ. 8934(RWS).**

United States District Court, S.D. New York.

May 30, 2002.

Drinker Biddle & Reath by Brian F. McDonough, New York City, for Interpleader–Plaintiff.

Chadbourne & Parke by Kenneth Caruso, Jeffrey I. Wasserman, New York City, for Interpleader–Defendants, J. Virgil Waggoner and J.V.W. Investment, Ltd.

Richardson Mahon Casey & Rooney by James J. Mahon, New York City, for Interpleader–Defendant Donal Kelleher.

Milbank Tweed Hadley & McCloy by Andrew E. Tomback, Matthew M. Oliver, New York City, for Cross–Claim Defendant.

## OPINION

SWEET, District Judge.

Cross-claim defendant Suisse Security Bank and Trust Ltd. ("SSBT") has moved: (1) to dismiss the action brought by interpleader plaintiff Correspondent Services Corporation ("CSC") pursuant to CSC's Notice of Voluntary Dismissal under Rule 41(a), Fed.R.Civ.P., and for lack of subject matter jurisdiction pursuant to Rule 12(h)(3), Fed.R.Civ.P.; (2) to return its attached assets to its receiver in the Bahamas pursuant to 11 U.S.C. § 304; and (3) to be awarded attorneys' fees incurred in defending this action. Interpleader defendant JVW Investments Ltd. ("JVW") has moved for summary judgment on its cross-claim for breach of contract. For the reasons set forth below, SSBT's motions are granted and the summary judgment motion by JVW is denied.

As will become more apparent from the discussion that follows, this action results from a complicated web of offshore trans-actions initiated by JVW, a Commonwealth of Dominica International Business Company, owned and controlled by J.V. Waggoner, a Texas resident. JVW and Waggoner had developed a relationship with interpleader defendant Donal Kelleher, a citizen of Great Britain, which has become the subject of cross-claims. SSBT, a banking company established under the laws of the Commonwealth of the Bahamas, became an additional defendant on these cross-claims as a result of its participation in the affairs of JVW, Waggoner, and Kelleher, and is now currently bankrupt and in liquidation. Despite this protracted litigation, the Waggoner/Kelleher dispute remains somewhat unresolved, but the claim of JVW and Waggoner has moved to the foreground to a large extent as a result of the attachment of SSBT funds by this Court. The issues now raised and discussed below require that these disputes be resolved elsewhere.

### Prior Proceedings

This interpleader action was commenced on August 16, 1999 by CSC, which held a certificate of deposit to which several parties laid claim. The defendants answered, asserted cross-claims, and moved for various relief. Four opinions in this case have been filed, familiarity with which is assumed. *See Correspondent Services Corp. v. J.V.W. Investments Ltd.*, 173 F.Supp.2d 171 (S.D.N.Y.2001) ("*JVW IV*"); *Correspondent Services Corp. v. J.V.W. Investments Ltd.*, 204 F.R.D. 47 (S.D.N.Y.2001) ("*JVW III*"); *Correspondent Services Corp. v. J.V.W. Investments Ltd.*, 120 F.Supp.2d 401 (S.D.N.Y.2000) ("*JVW II*"); *Correspondent Services Corp. v. J.V.W. Investment Ltd.*, No. 99 Civ. 8934(RWS), 2000 WL 1174980 (S.D.N.Y. August 18, 2000) ("*JVW I*").

On August 18, 2000, in *JVW I*, 2000 WL 1174980, at *22, this Court denied Kelleher's motion to disqualify Kenneth A. Ca-

ruso, Esq. and Shaw Pittman from appearing as counsel for JVW and Waggoner, and granted in part Waggoner's motion to dismiss, which the Court converted to a motion for summary judgment.

On September 28, 2000, JVW moved by order to show cause to serve an amended pleading that asserted claims against SSBT and granted an order of attachment against SSBT. This Court issued a temporary restraining order attaching up to $3 million in assets held by SSBT. On November 13, 2000, in *JVW II*, 120 F.Supp.2d at 406, the Court confirmed the order of attachment. On April 18, 2001, a second amended order of attachment was entered, and SSBT's funds were turned over to the United States Marshal the following day.

Discovery proceeded with documents produced, interrogatories answered, and depositions taken. This Court discharged CSC from liability in this action and, in *JVW III*, 204 F.R.D. at 50, awarded attorney's fees to CSC. On November 26, 2001, this Court granted in part a motion for summary judgment brought by Waggoner as to Kelleher's amended cross-claim alleging breach of fiduciary duty. Waggoner's motion was denied as to Kelleher's cross-claim alleging breach of contract, and Kelleher's cross-motion to compel further discovery was granted in part. *See JVW IV*, 173 F.Supp.2d at 181.

Meanwhile, on July 3, 2001, SSBT, by letter to the Court, had raised the question whether the Court has subject matter jurisdiction. CSC was granted leave to file an amended complaint, which CSC did on or about August 20, 2001. SSBT moved to dismiss the original complaint on August 22, 2001 and briefing and submissions continued until February 4, 2002. On October 21, 2001, CSC filed a "Notice of Voluntary Dismissal of Amended Complaint" with this Court. The Court received correspondence on the issue, and the issue was argued in the briefings relating to SSBT's motion to dismiss.

On March 11, 2002, JVW filed a motion for summary judgment on its cross-claim against SSBT for breach of contract. The motion was deemed fully submitted on April 17, 2002.

### The Facts

On June 26, 1998, British Trade and Commerce Bank ("BTCB"), organized under the laws of Dominica, issued a Certificate of Time Deposit (the "CTD") to JVW. The CTD stated on its face that JVW "has deposited with this bank the sum of TEN MILLION DOLLARS...." The CTD, however, also provided, "Deposits made in any form shall not be considered good until the same have been cleared." The CTD states, "This deposit shall bear interest at the rate of SIX Percent (6%) per Annum for a period of 365 Days ..." The CTD would mature on June 25, 1999. The CTD continues, "The deposit covered by this certificate will be paid by the issuing Bank ... upon presentation of the original certificate duly endorsed by the depositor." Finally, the CTD stated:

> If the deposit is not withdrawn on the maturity date, the deposit shall be treated as a regular savings account and shall earn interest as such from the date of maturity up to the date of actual withdrawal.

At the time the CTD was issued to JVW, JVW had made no deposits with BTCB. JVW instructed BTCB to deliver the CTD to SSBT in the Bahamas to be held in JVW's account with SSBT. After a dispute arose between SSBT and JVW, JVW requested that SSBT transfer the CTD to First Equity Corporation of Florida ("First Equity"), a Miami brokerage house that was a subsidiary of BTCB. In September and October of 1998, JVW made several deposits into its account at

BTCB which, according to SSBT, totaled approximately $7.7 million. BTCB then issued a new Certificate of Deposit (the "CD") as a substitute for the CTD issued earlier, containing the term that "[d]eposits made in any form shall not be considered good until the same have been cleared," and was identical to the original CTD except for its title and for the fact that it was issued to "Bearer" rather than to JVW. This "Bearer" CD became the subject of this interpleader action. From July 1998 through May 1999, the CTD and thereafter its replacement, the CD, were reflected on JVW's account statements from First Equity, which clears through CSC/PaineWebber,[1] as having a face value of $10 million.

In June of 1999, as the CD was about to become due, BTCB informed Waggoner that because only $7.7 million had been deposited by JVW—rather than the $10 million expected—the CD was worth only $7.7 million. At that time, Kelleher commenced a letter writing campaign to PaineWebber and other entities in which he purported to be the "sole director" of JVW and made demands with respect to JVW's brokerage account at First Equity.

On June 25, 1999, the CD matured and pursuant to its terms reverted to a savings account at BTCB. At the same time, JVW liquidated its bank account at BTCB, and transferred the funds contained therein (approximately $7.7 million) to another account in the name of a different corporation, the "Wagonwheel Trust." Contemporaneously with this transfer, BTCB issued a new CD to Overseas Projects, Ltd. a Dominica corporation also organized and owned by Waggoner. This third CD, with a face value of approximately $7.7 million is not now and has never been in the custody of interpleader plaintiff CSC. The monthly statements for JVW's brokerage account at First Equity thereafter reflected a "zero" value for the CD.

On August 16, 1999, CSC commenced this interpleader action seeking to resolve what it regarded as competing claims to the "Bearer" CD in its possession. The complaint named, but did not otherwise assert any causes of action against interpleader defendants JVW, First Equity,[2] Waggoner, and Kelleher, and alleged jurisdiction under 28 U.S.C. § 1335. JVW and Waggoner jointly answered and asserted a variety of claims against Kelleher, who, in turn, asserted claims against Waggoner for breach of fiduciary duty and breach of contract.

On September 28, 2000, JVW and Waggoner moved by order to show cause to assert claims against SSBT for conversion, aiding and abetting a conversion, breach of contract, and unjust enrichment and sought to attach $3 million of funds belonging to SSBT. The Court confirmed the attachment by order on November 13, 2000, *see JVW II*, 120 F.Supp.2d at 406, and a second amended order of attachment was entered on April 18, 2001. Thereafter, Kelleher asserted claims against SSBT for interference with economic advantage and indemnification. SSBT answered the claims asserted against it, and counterclaimed against Kelleher, JVW, and Waggoner for contribution and indemnity.

### Discussion

**I. CSC's Interpleader Action Against SSBT Is Dismissed**

**A. CSC's Action Is Dismissed Under Rule 41(a)(2)**

SSBT contends that CSC's Notice of Voluntary Dismissal should be construed

---

**1.** UBS PaineWebber ("PaineWebber") is the parent company of CSC.

**2.** First Equity has not appeared in this action.

as a motion for permission to dismiss under Rule 41(a) (2), Fed.R.Civ.P. The Waggoner parties argue that the Notice of Voluntary Dismissal was filed pursuant to Rule 41(a)(1)(i) and was therefore a nullity because the original complaint already had been answered and a motion had been made for summary judgment.

Rule 41(a) of the Federal Rules of Civil Procedure states, in pertinent part:

**(a) Voluntary Dismissal: Effect Thereof**

**(1) By Plaintiff; by Stipulation.** [A]n action may be dismissed by the plaintiff without order of the court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, which-ever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice....

**(2) By Order of Court.** Except, as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's insistence save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Construing CSC's submissions a motion to dismiss pursuant to Rule 41(a)(2) is appropriate and is consistent with practice in this district. *See, e.g., Kya–Hill v. Davidson,* No. 87 Civ. 7802(JES), 1988 WL 108487, at *1 (S.D.N.Y. Oct. 12, 1988) (treating letter from counsel as a motion for dismissal pursuant to Rule 41(a)(2)); *see also Fabry v. Meridian Vat Reclaim, Inc.,* Nos. 99 Civ. 5149 and 99 Civ. 5150(NRB), 2000 WL 1515182 at *2 (S.D.N.Y. Oct. 11, 2000) (treating correspondence between counsel as motion for summary judgment). CSC, in addition to filing a Notice of Voluntary Dismissal, submitted letters to the Court setting forth the basis for the requested dismissal with prejudice and certain of the reasons why the dismissal should be granted. Specifically, CSC stated that because CSC received the complete release from Kelleher, it no longer faced competing claims to the CD and has no desire to continue with costly litigation. The other parties to this action have responded through correspondence and formal motion papers. Accordingly, requiring a formal motion would not have advanced the Court's or the parties' understanding of the issue.

Turning to the substance of the motion, Rule 41(a)(2) provides that, except where all parties agree to a stipulation of dismissal, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2). While a "[v]oluntary dismissal without prejudice is ... not a matter of right," *Zagano v. Fordham Univ.,* 900 F.2d 12, 14 (2d Cir.1990), such a dismissal "will be allowed 'if the defendant will not be prejudiced thereby.'" *D'Alto v. Dahon California, Inc.,* 100 F.3d 281, 283 (2d Cir.1996) (*quoting Wakefield v. Northern Telecom Inc.,* 769 F.2d 109, 114 (2d Cir. 1985)). "[T]he presumption in this circuit is that a court should grant a dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result." *Gap, Inc. v. Stone*

*Int'l Trading, Inc.,* 169 F.R.D. 584, 588 (S.D.N.Y.1997) (citations omitted).

■ "The United States Supreme Court recognized long ago that starting a litigation all over again does not constitute legal prejudice." *D'Alto,* 100 F.3d at 283 (*citing Jones v. Sec. & Exch. Comm'n,* 298 U.S. 1, 19, 56 S.Ct. 654, 80 L.Ed. 1015 (1936)). Accordingly, the Second Circuit has set forth five factors that are to be weighed in determining whether a court should grant a dismissal under Rule 41(a)(2):

(1) the plaintiff's diligence in bringing the motion;

(2) any "undue vexatiousness" on plaintiff's part;

(3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for the trial;

(4) the duplicative expense of relitigation; and

(5) the adequacy of plaintiff's explanation for the need to dismiss.

*See Zagano,* 900 F.2d at 14.

■ These factors weigh in favor of granting dismissal under Rule 41(a)(2). CSC sought to dismiss its claims upon receiving a release from Kelleher to any claims he may have had to the CD in question, or to any claims he may have had against CSC arising out of or relating to its safekeeping or custody of the CD. There was no delay in requesting dismissal. There is also no suggestion of "undue vexatiousness" on the part of CSC, and its explanation for seeking dismissal is more than adequate. CSC has achieved the result that it wanted—full release from competing claims to the CD. *See, e.g., Gap, Inc.,* 169 F.R.D. at 588 (finding a "plausible explanation" for dismissal where "defendants no longer appear to be engaged in the complained of activity"). CSC cannot be forced to continue as a plaintiff and

engage in motion practice where the dispute which initially led it to seek interpleader relief no longer exists.

The Waggoner parties argue that the motion should be denied based on the "advanced stage" of the proceedings and because of the purported prejudice created by the prospect of relitigation in state court. However, the cases cited by the Waggoner parties relate to claims that had progressed to a much later stage than this proceeding and involved plaintiffs who would have sought to relitigate their claims in state court upon dismissal. *See Hartford Acc. & Indem. Co. v. Costa Lines Cargo Services,* Inc., 903 F.2d 352, 361 (5th Cir.1990) (finding no abuse of discretion in denying dismissal where one defendant had already been granted summary judgment, a jury trial had been set, the plaintiff was "far less than prompt" in seeking voluntary dismissal, and the plaintiff would seek to relitigate its claims); *Belcher v. Serriano,* No. 95 Civ. 1340 (RSP/GJD), 1998 WL 146256, at *3 (N.D.N.Y. Mar. 19, 1998) (denying dismissal where the case had progressed "significantly" and plaintiff was not reasonably diligent in seeking dismissal); *Philan Insurance Ltd. v. Frank B. Hall & Co.,* 786 F.Supp. 345, 349 (S.D.N.Y.1992) (denying dismissal when the litigation had been pending for more than four years, there was less than one month before the scheduled trial conference, and plaintiffs expressly asserted that they wished to bring the remaining state claims in state court).

For these reasons, dismissal is appropriate under Rule 41(a)(2).

## B. *This Court Lacked Subject Matter Jurisdiction*

Notwithstanding CSC's voluntary dismissal under Rule 41(a), a request which was initiated after the filing of an amended

complaint, this court lacked subject matter jurisdiction under the original complaint.[3]

### 1. *The Lack of Value in the CD Deprived This Court of Jurisdiction*

■ Jurisdiction in this action was predicated solely on 28 U.S.C. § 1335, the interpleader statute. In order to establish jurisdiction under this section, the party seeking interpleader relief "bears the burden of establishing that the requirements for interpleader are satisfied." *J.B.I. Indus., Inc. v. Suchde,* No. 99 Civ. 12435(AGS), 2000 WL 1174997, at *14 (S.D.N.Y. Aug. 17, 2000) (citations omitted). Section 1335 provides:

> The district courts shall have original jurisdiction of any civil action of interpleader ... by any person, firm, or corporation ... having in his or its custody or possession money or property of the value of $500 or more ... if (1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property ...; and if (2) the plaintiff has deposited such money or property ... into the registry of the court.

28 U.S.C. § 1335. Accordingly, to satisfy the jurisdictional prerequisites, it must be shown that "the property ... in controversy ... is valued at a minimum of $500." *J.B.I. Indus., Inc.,* 2000 WL 1174997, at *14 (citations omitted).

Although the CD purported to be in the "face amount" of $10 million, by its express terms the CD has only the value of funds that have been deposited with BTCB. Because JVW had no funds on deposit with BTCB at the time this action was filed, and has no funds on deposit with BTCB at this time, the CD that is the subject of this interpleader action is not worth the $500 jurisdictional minimum.

Pursuant to its terms, the CD expired on June 25, 1999, and reverted to a savings account held by JVW at BTCB. Accordingly, upon expiration, the holder of the CD had no right to demand payment from BTCB. Only the owner of the savings account, JVW, was entitled to withdraw or transfer the funds on deposit.

Further, after June of 1999 when the CD expired, the account statements for JVW's brokerage account at First Equity reflected a "zero" value for the CD. These statements, which were available to CSC as the clearing agent for First Equity, confirm that CSC knew, or could have known, that at the time it filed this action the jurisdictional threshold was not satisfied, as did JVW and Waggoner, Waggoner having caused BTCB to issue a third CD to another Dominican company that he created and controlled, Overseas Projects, Ltd.

Although Kelleher asserted claims to the CD and made statements that the CD was valuable, he had no knowledge of the various bank transfers undertaken by JVW, Waggoner, or the newly-formed Overseas Projects, Ltd. and cannot confer jurisdiction on this Court.

### 2. *CSC's Purported Good–Faith Belief That The CD Was Valuable, Even If True, Is Irrelevant*

■ JVW and Waggoner have attempted to overcome the jurisdictional defect by arguing that CSC had a good faith concern that it was being subjected to multiple claims in excess of $500. This argument is unavailing. The $500 jurisdictional threshold must be satisfied independently of an interpleader plaintiff's belief that it is sub-

---

**3.** As described more fully below, this Court therefore lacked subject matter jurisdiction at the time it ordered the attachment on SSBT's assets.

ject to multiple claims. *See Atlantic Bank of New York v. Homeowners Financial Corp.*, No. 97 Civ. 1274(LMM), 1999 WL 144508, at *2 (S.D.N.Y. March 17, 1999) ("The requirements for statutory interpleader are: (1) the amount in controversy must be $500 or greater; (2) two or more of the claimants are of diverse citizenship; and (3) the stakeholder has deposited the disputed funds into the registry of the court.").

As an initial matter, CSC's purported good faith belief that it was facing multiple claims in excess of $500 is questionable in light of the fact that all CSC had to do was to look at the First Equity/Paine Webber account statements to determine that the CD's value was zero. Good faith certainly implies the exercise of some reasonable level of diligence.

Further, JVW and Waggoner have cited cases addressing an interpleader plaintiff's good faith belief that it is facing multiple claims, not a good faith belief that the property is worth in excess of $500. For example, in *Sotheby's Inc. v. Garcia*, 802 F.Supp. 1058 (S.D.N.Y.1992), an interpleader defendant sought dismissal for lack of interpleader jurisdiction by challenging the merits of another interpleader defendant's claim to the subject property. Similarly in *Rubinbaum LLP v. Related Corp. Partners V, L.P.*, 154 F.Supp.2d 481 (S.D.N.Y.2001), the issue was whether section 1335 includes jurisdiction over individuals with potential claims to the subject property who have not yet asserted those potential claims. The court in *Rubinbaum* did not discuss the $500 interpleader threshold because the subject property, funds held by plaintiff as an escrow agent, was cash of $906,963.56. *See id.* at 483.

By establishing the $500 jurisdictional minimum and requiring the satisfaction of that requirement prior to reaching the question of a proposed interpleader plain-

tiff's good faith belief that it is facing multiple claims, the statutory scheme leaves no room for the subjective measurement of value which JVW and Waggoner propose. Indeed, to permit the $500 value threshold to be satisfied by a subjective belief would ignore the language of the statute and render the requirement meaningless. *See Krishna v. Colgate Palmolive Co.*, NO. 90 Civ. 4116(CSH), 1991 WL 125186, at *2 nn. 3–4 (S.D.N.Y. July 2, 1991) (explaining that while, under 28 U.S.C. § 1335, "the amount in controversy must exceed $500.00," the statute, by contrast, "provides for interpleader jurisdiction when 'two or more adverse claimants ... are claiming *or may claim* to be entitled to such money or property ....'") (*quoting* 28 U.S.C. 1335) (emphasis in original).

## II. *The Court Has No Jurisdiction over the Cross–Claims and the Summary Judgment Motion is Denied*

JVW and Waggoner argue that, even if CSC's action is dismissed, this Court is not deprived of jurisdiction to adjudicate the cross-claims among the Waggoner Parties, Kelleher, and SSBT. Specifically, they argue that (i) this Court may exercise supplemental jurisdiction over the cross claims, and (ii) an independent basis for jurisdiction exists, notwithstanding dismissal of CSC's interpleader claims.

### A. *Supplemental Jurisdiction Is Not Appropriate*

The exercise of supplemental jurisdiction by the district courts is governed by 28 U.S.C. § 1367. Subsection (c) provides that:

> [t]he district courts may decline to exercise supplemental jurisdiction ... if (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims

over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). "The decision whether or not to exercise supplemental jurisdiction under § 1367(c) involves considerations of judicial economy, convenience, comity, and fairness to litigants." *Ponticelli v. Zurich Am. Ins. Group,* 16 F.Supp.2d 414, 438 (S.D.N.Y.1998) (citations omitted). Only one of the four prongs of section 1367(c) must be satisfied in order to decline to exercise supplemental jurisdiction. *See Riley v. Town of Bethlehem,* 44 F.Supp.2d 451, 467 (N.D.N.Y.1999) ("A district court ... may decline to exercise supplemental jurisdiction over a claim for any one of four enumerated exceptions set forth in 28 U.S.C. 1367(c)") (internal quotations omitted).

■ Here, the only federal claim presented in this action has been dismissed. Accordingly, supplemental jurisdiction over the remaining cross-claims is inappropriate since dismissal of all federal claims before trial generally calls for the dismissal of any remaining state law claims. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343–350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 104 (2d Cir.1990) ("[I]t is well settled that 'if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.' ") (*quoting United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)).

Further, the deposit contract upon which JVW has sued SSBT for breach explicitly provides that "the relationship between SSBT and the Account Holder [JVW] shall be governed by and construed in accordance with the laws of the Commonwealth of the Bahamas." This contract includes provisions limiting SSBT's liability for actions taken in reliance upon forged instructions and placing the burden of proving that instructions were not authorized on the account holder. The interpretation and application of these provisions in accordance with Bahamian law will be central to the resolution of JVW's breach of contract claim against SSBT. Because "the principles embodied by subsection (c)(1) [of 28 U.S.C. § 1367] are implicated by complex issues of foreign law as well as state law," supplemental jurisdiction would not be appropriate. *Mars Inc. v. Nippon Conlux Kabushiki–Kaisha,* 825 F.Supp. 73, 75–76 (D.Del.1993) (declining to exercise supplemental jurisdiction under 1367(c)(1) because court "anticipates disagreements among the parties as to the substance of Japanese patent law"); *see also Morse v. Univ. of Vt.,* 973 F.2d 122, 128 (2d Cir.1992) ("[I]t may be an abuse of discretion for a district court to refuse to dismiss a pendent state claim after it dismisses a federal claim, particularly where the state cause of action that remains for decision in federal court involves novel questions of state law.") (*citing Raucci v. Town of Rotterdam,* 902 F.2d 1050, 1054 (2d Cir.1990)); *In re New York Trap Rock Corp.,* 160 B.R. 876 (S.D.N.Y.1993), *aff'd in part, vacated in part on other grounds,* 42 F.3d 747 (2d Cir.1994) (declining to exercise supplemental jurisdiction where the remaining claims presented novel questions under the law of Argentina and where Argentina was the primary location of the underlying relevant assets).

The issues raised by the cross-claims, all issues of state or foreign law, predominate over those relating to the ownership of the CD. This action is fundamentally about the failed business venture between Waggoner and Kelleher and the circumstances surrounding SSBT's investment of the funds deposited in the JVW account. "Where the state claims constitute the real body of a case to which federal claims are an appendage, declining jurisdiction under [subsection (c)(2) ] is appropriate to prevent a situation wherein permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." *City of New Rochelle v. Town of Mamaroneck*, 111 F.Supp.2d 353, 371 (S.D.N.Y.2000) (citations and internal quotations omitted).

Finally, comity, a factor which informs the analysis of whether or not to exercise supplemental jurisdiction, *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130; *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 447 (2d Cir.1998), calls for dismissal of the cross-claims. Comity is properly granted to a foreign court upon the showing that the foreign court is of competent jurisdiction, and that the laws and the public policy of the forum state and the rights of its citizens will not be violated. *See Hilton v. Guyot*, 159 U.S. 113, 202–03, 16 S.Ct. 139, 158–59, 40 L.Ed. 95 (1895); *Clarkson Co. v. Shaheen*, 544 F.2d 624, 629 (2d Cir.1976); *Kenner Products Co., a Division of CPG Products Corp. v. Societe Fonciere et Financiere Agache–Willot*, 532 F.Supp. 478, 479 (S.D.N.Y.1982). It is particularly appropriate to grant comity with respect to foreign bankruptcy proceedings, as equity requires the resolution of all claims in a single proceeding. *See Ecoban Fin. Ltd. v. Grupo Acerero Del Norte, S.A. De C.V.*, 108 F.Supp.2d 349, 351–52 (S.D.N.Y.2000).

SSBT has been placed into receivership in the Bahamas, the equivalent of U.S. bankruptcy proceedings. The courts in this and other circuits consistently have granted comity to Bahamian liquidation proceedings, recognizing the sufficiency of those proceedings in protecting the laws and public policy of the United States and the rights of its residents. *See, e.g., In re Thornhill Global Deposit Fund, Ltd.*, 245 B.R. 1, 16 (Bankr.D.Mass.2000); *In re Hackett*, 184 B.R. 656, 659 (Bankr. S.D.N.Y.1995); *In re Spanish Cay Co., Ltd.*, 161 B.R. 715, 726 (Bkrtcy.S.D.Fla. 1993); *In re Culmer*, 25 B.R. 621, 632 (Bankr.S.D.N.Y.1982). Accordingly, the disposition of SSBT's assets should be determined by the Bahamian court before which the liquidation proceedings are pending. The Bahamian liquidation proceedings will most adequately protect the rights of all of SSBT's creditors, including JVW and Waggoner, who chose the Bahamas as the location to deposit their funds and begin their investment scheme.

In consideration of all of the above-mentioned factors, supplemental jurisdiction is not appropriate.

**B.  *There is No Independent Basis for Jurisdiction Over the Cross– Claims***

Waggoner and JVW contend that, notwithstanding dismissal of CSC's interpleader claims, this Court has an independent basis for subject matter jurisdiction over the cross-claims pursuant to 28 U.S.C. § 1332. Specifically, the Waggoner parties state that claims were asserted by Kelleher personally against Waggoner, and because no other entities are involved in those claims, diversity jurisdiction exists.

Both parties acknowledge that in deciding whether diversity is present, the Court has a duty to "look beyond the

pleadings, and to arrange the parties according to their sides in the dispute." *City of Indianapolis v. Chase National Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47 (1941) (internal quotations omitted). However, the Waggoner parties have requested that this Court ignore CSC's involvement and imagine a hypothetical conflict between only Kelleher (of U.K.) and Waggoner (of Texas). Presumably, under this scenario Waggoner and JVW (of Dominica) would have counterclaimed against Kelleher, and brought in SSBT (of the Bahamas) as a defendant on the cross-claims. But regardless of who brings the action and how the parties become involved, any suit involving Waggoner, JVW, Kelleher, and SSBT necessarily involves aliens adverse to each other. *See Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 790 (2d Cir.1980) ("[T]he presence of aliens on two sides of a case destroys diversity jurisdiction.") (citation omitted); *see also Franceskin v. Credit Suisse,* 214 F.3d 253, 258 (2d Cir.2000); *Int'l. Shipping Co., S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388, 391 (2d Cir.1989); *Kunica v. St. Jean Fin., Inc.,* 63 F.Supp.2d 342, 349 (S.D.N.Y.1999). Accordingly, this attempt to create diversity jurisdiction is ineffective. *See Federal Ins. Co. v. Safeskin Corp.,* No. 98 Civ. 2194(DC), 1998 WL 832706, at *2–3 (S.D.N.Y. Nov. 25, 1998).

## C. *The Motion for Summary Judgment is Denied for Lack of Jurisdiction*

On March 11, 2002, JVW filed a motion for summary judgment on its cross-claim for breach of contract. For the reasons stated above, this Court does not have jurisdiction over the cross-claims in this action. Accordingly, the motion for summary judgment is denied for lack of jurisdiction.

## III. *The Attachment is Vacated*

SSBT has requested that the attached assets be returned to the possession of SSBT's receiver in the Bahamas pursuant to 11 U.S.C. § 304. As mentioned, SSBT has been placed into liquidation proceedings in the Bahamas, the equivalent of a United States bankruptcy proceeding.

Section 304 of the Bankruptcy Code was enacted to permit a foreign representative of a foreign bankruptcy estate to file a petition to protect the assets of the debtor's estate located in the United States and to prevent the dismemberment and distribution of those assets. It provides, in relevant part:

(a) A case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative.

(b) Subject to the provisions of subsection (c) of this section, if a party in interest does not timely controvert the petition, or after trial, the court may . . .

(2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or

(3) order other appropriate relief.

11 U.S.C. § 304(a), (b).

JVW and Waggoner attack SSBT's application for a turnover of assets under 11 U.S.C. § 304 as procedurally defective because it "comes for the first time in reply papers." (Sur–Reply at 14). The prohibition against raising new matter for the first time in reply has no application where, well prior to the drafting of the reply brief, the opposing party seeks and obtains the right to file a sur-reply. *See Becker v. Ulster Cty.,* 167 F.Supp.2d 549, 555 n. 1 (N.D.N.Y.2001) (*citing Bonnie & Comp. Fashions, Inc. v. Bankers Trust Comp.,* 945 F.Supp. 693, 708 (S.D.N.Y. 1996); *Litton Indus. v. Lehman Bros.*

*Kuhn Loeb Inc.*, 767 F.Supp. 1220, 1235 (S.D.N.Y.1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir.1992)). JVW sought and obtained the opportunity to respond to SSBT's section 304 application which, of course, resulted from the march of time.

▆ The Waggoner parties also argue that this Court is unable to reach the merits of SSBT's application because SSBT did not move before the bankruptcy court for relief under Section 304. By its terms, Section 304 requires that a "foreign representative" commence a "case ancillary to a foreign proceeding" by filing a petition "with the bankruptcy court." No such petition has been filed as to the attached funds at issue in this action. However, on February 22, 2002, SSBT, on behalf of Raymond Winder, its Provisional Liquidator, filed a Section 304 petition in the United States Bankruptcy Court for the Southern District of New York. That petition exempted from its request the turnover of the assets that have been attached in this action. *See* Verified Petition Pursuant to Section 304 of the Bankruptcy Code to Commence a Case Ancillary to a Foreign Proceeding, No. 02–10812, at 9 n. 1 (Feb. 22, 2002).

SSBT cites *Cunard Steamship Co., Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452 (2d Cir.1985), *aff'g* 49 B.R. 416 (S.D.N.Y. 1985) and *Interpool Limited v. Certain Freights of the M/VS Venture Star, Mosman Star, Fjord Star, Lakes Star, Lily Star*, 878 F.2d 111, 114 (3d Cir.1989), for its position that district courts have the authority to rule on Section 304 applications. However, it must be recognized that in *Cunard*, the Court of Appeals affirmed this Court's order to vacate an order of attachment on grounds of *comity*, not Section 304, and held that Section 304 was not intended to be exclusive remedy for a foreign bankrupt. *See Cunard*, 773 F.2d at 455. In *Interpool*, the district court removed a Section 304 application from the bankruptcy court in which it was originally filed and consolidated it with the proceedings before the court. Unlike the facts in this case, however, the Section 304 application had already been filed in bankruptcy court and the commencement requirements of 11 U.S.C. 304(a) had been met. *See Interpool*, 878 F.2d at 111.

While there is support for the view that Section 304 factors may be considered without the filing of a petition in Bankruptcy Court, *see, e.g., Ma v. Continental Bank, N.A.*, 905 F.2d 1073 (7th Cir.1990), *cert. denied*, 498 U.S. 967, 111 S.Ct. 430, 112 L.Ed.2d 414 (1990); *see generally* 28 U.S.C. § 151, there is a preference in this circuit, notwithstanding the language of 11 U.S.C. § 304(a), for allowing courts with expertise in bankruptcy matters to determine the effect foreign bankruptcy proceedings should be given in the United States. *See Cunard*, 773 F.2d at 455 ("Since bankruptcy courts possess a general expertise in bankruptcy matters, there is an historic preference which favors bankruptcy adjudications by a judge with experience in bankruptcy law.") (*citing In re Kaiser*, 722 F.2d 1574, 1581 (2d Cir. 1983)). This preference extends to requests for relief under Section 304 of the Bankruptcy Code. *See id.* ("Since section 304 was designed for cases such as this, it would have been eminently proper for the district court to have referred the case to a bankruptcy 'unit' of the court.'"); *RBS Fabrics Ltd. v. G. Beckers & Le Hanne*, 24 B.R. 198, 200 (S.D.N.Y.1982) ("[T]he preferable procedure is to have the ancillary proceeding brought in the United States bankruptcy court so that the provisions of 11 U.S.C. §§ 304(b) and (c) can be applied by the bankruptcy court. . . .").

However, as the Court of Appeals held in *Cunard*, an ancillary proceeding under Section 304 is not meant to be the exclu-

sive remedy for a foreign bankrupt. *See Cunard,* 773 F.2d at 455. The principle of international comity may, for example, guide the decision on whether to grant the relief requested by a party. *See id.* at 456; *see also Hembach v. Quikpak Corp.,* No. Civ. A. 97–3900, 1998 WL 54737, at *4 n. 4 (E.D.Pa.1998) (*"Interpool* and *Cunard* also sanction, implicitly and expressly, the bringing of a motion to extend comity to a foreign bankruptcy proceeding in this court rather than the bankruptcy court.").

SSBT has not asked for relief on grounds of comity, and has based its request solely on the authority of Section 304 of the Bankruptcy Code. Since it filed this motion, it has filed a Section 304 petition in the Bankruptcy Court of this District for, *inter alia,* the turnover of all of its U.S. assets other than those attached by this Court. In light of these developments and the authorities cited above, this Court finds that the Bankruptcy Court is the appropriate forum for SSBT's request.

Accordingly, the attachment will be vacated due to the dismissal of this action and the Court's lack of subject matter jurisdiction at the time of the order of attachment. Any application for a request to turnover these assets pursuant to Section 304 should be filed with the Bankruptcy Court.

## IV. *SSBT Is Entitled To Attorney's Fees*

Article 62 of the New York Civil Practice Law and Rules (CPLR), the statutory basis for this Court's order of attachment, permits a defendant whose property has been wrongfully attached to recover "all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment ... if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property." CPLR § 6212(e). The purpose of

this section is "to make the attaching plaintiff strictly liable for all damages occasioned by a wrongful attachment" including "reasonable attorney's fees, which may be sustained by reason of the attachment." *Roth v. Pritikin,* 787 F.2d 54, 59 (2d Cir.1986) (citation and internal quotations omitted).

■ "A defendant is not required to prevail on the merits in order for the court to award damages" under section 6212(e). *Rashi Textiles, U.S.A., Inc. v. Rhomberg Textil Gesellschaft M.B.H.,* 857 F.Supp. 1051, 1054 (S.D.N.Y.1994); *see also ENH, Inc. v. Int'l Diffusion SRL,* No. 97 Civ. 3202(LAP), 1997 WL 294388, at *3 (S.D.N.Y. June 2, 1997). Rather, a dismissal of the case or of the attachment on any basis, procedural or substantive, is sufficient to support an award of damages and attorney's fees. *See, e.g., Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709 (2d Cir.1987) (awarding fees where case was dismissed and attachment vacated based on comity considerations in light of foreign bankruptcy proceeding); *Gaskin v. Stumm Handel GmbH,* 390 F.Supp. 361 (S.D.N.Y.1975) (awarding costs and damages pursuant to Rule 6212(e) where case in which attachment had been granted was dismissed based on a forum selection clause requiring litigation of disputes in Germany), *Minskoff v. Fidelity and Cas. Co.,* 28 A.D.2d 85, 87, 281 N.Y.S.2d 410, 411 (1st Dep't 1967) (awarding damages incurred during attachment upon a dismissal based on *forum non conveniens* grounds).

■ JVW and Waggoner have contended that damages for wrongful attachment are appropriate only upon some showing of culpable conduct. As stated, however, an attaching plaintiff is strictly liable for all damages resulting from a wrongful attachment. *Roth,* 787 F.2d at

59. The language of the statute is unambiguous in this regard:

> The plaintiff *shall* be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment, *or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property.*

CPLR § 6212(e) (emphasis added); *see also Merck & Co., Inc. v. Technoquimicas S.A.,* No. 01 Civ. 5345(NRB), 2001 WL 963977, at *3 (S.D.N.Y. Aug. 22, 2001) ("[I]t is significant that § 6212(e) is not worded in the conditional.... Thus, New York law requires an award of fees by virtue of the fact that the attachment was vacated as unwarranted.").

 SSBT is entitled to an award of attorney's fees that it has incurred since the entry of the order of attachment on November 17, 2000. At the time this action was filed and at the time JVW and Waggoner asserted claims against SSBT, the Court lacked subject matter jurisdiction. Waggoner was in possession of a new CD that represented and was purchased with the same funds that had once backed the expired CD that was alleged to be the original basis of jurisdiction. In addition, Waggoner personally liquidated JVW's bank account prior to the commencement of this action. In light of these circumstances and the authorities cited above, an award of attorney's fees under § 6212(e) is appropriate.

## Conclusion

For the reasons set forth, this action is dismissed. There is no jurisdiction over the cross-claims and, therefore, JVW's motion for summary judgment is denied. The attachment of SSBT's assets will be vacated but a turnover will not be ordered. The request for attorneys' fees is granted.

Settle judgment on notice.

It is so ordered.